UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**VICTOR ARIZA**,

      Plaintiff,

vs.

**THE COFFEE BEANERY, LTD.,**
**a foreign for-profit corporation, and**
**DOLPHIN DE AUBERET, INC.,**
**d/b/a COFFEE BEANERY,**
**a Florida for-profit corporation,**

      Defendants.

_____/

## COMPLAINT

Plaintiff VICTOR ARIZA, through undersigned counsel, sues Defendants THE COFFEE

BEANERY LTD., a foreign for-profit corporation, and DOLPHIN DE AUBERET, INC., d/b/a

COFFEE BEANERY, a Florida for-profit corporation, and alleges as follows:

1.      This is an action for declaratory and injunctive, attorney's fees, costs, and litigation

expenses for unlawful disability discrimination in violation of Title III of the Americans with

Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

2.      This Court has jurisdiction over this case based on federal question jurisdiction, 28

U.S.C. §1331, and the provisions of the ADA.  Plaintiff seeks declaratory and injunctive relief

pursuant to 28 U.S.C. §§2201 and 2202.

3.      Venue is proper in this Court as all actions complained of herein and injuries and

damages suffered occurred in the Southern District of Florida.

4.      Plaintiff VICTOR ARIZA is a resident of Miami-Dade County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.      Plaintiff is and at all relevant times has been blind and visually disabled in that he suffers from optical nerve atrophy, a permanent eye disease and medical condition that substantially and significantly impairs his vision and limits his ability to see.  Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles.  As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and in 42 U.S.C. §3602(h).  Plaintiff is also an otherwise qualified individual with a disability who has been denied the benefits of a program or activity receiving federal financial assistance and is covered by the Rehab Act, 29 U.S.C. §794(a).  Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or the recipients of federal financial assistance and/or their respective and associated websites are in compliance with the ADA, the Rehab Act, and any other applicable disability laws, regulations, and ordinances.

6.      Because he is blind, Plaintiff cannot use his computer without the assistance of appropriate and available screen reader software.  Screen reader software translates the visual internet into an auditory equivalent.  At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a

change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.  The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *6-7 (E.D.N.Y. Dec. 21, 2017).

7.     Defendant DOLPHIN DE AUBERET, INC., d/b/a COFFEE BEANERY ("DOLPHIN") is a Florida for-profit corporation authorized to do business and doing business in the State of Florida, including Broward County, Florida.  Defendant THE COFFEE BEANERY, LTD. ("COFFEE BEANERY") is a foreign for-profit corporation that, although not registered with the State of Florida to do business in the State, has at all relevant times been doing business in the State and in Broward County, Florida through its associated website, https://www.coffeebeanery.com (the "Website"), and its affiliated, authorized, associated, licensed, and/or franchised companies operating physical "Coffee Beanery" retail stores and cafes, including DOLPHIN.  COFFEE BEANERY, through the Website and its affiliated, authorized, associated, licensed, and/or franchised retail stores and cafes, including the retail store and cafe owned and operated by DOLPHIN, thus advertises and sells its merchandise and food and beverage products to, and receives payment and revenues from, customers in the State of Florida, including Plaintiff.  COFFEE BEANERY purposefully targets and solicits business from Florida residents through the operation of the Website and its affiliated, associated, licensed, and/or franchised Florida store owned and operated by DOLPHIN, derives substantial revenues from

3

repeat business transactions from residents in Florida, and has more than a slight effect on the commerce of Florida as a result.

8.     At all times relevant hereto, and upon information and belief, COFFEE BEANERY, through its contracts, licensing, and/or franchise agreements with its authorized retail sellers, operates, conducts, and/or controls sales of its merchandise through, and derives substantial revenues from, its authorized chain of U.S.-based physical stores and cafes, including the Broward County, Florida "COFFEE BEANERY" authorized store owned and operated by DOLPHIN at the Sawgrass Mills Mall,  Sunrise, Florida, which Plaintiff intended to patronize in the near future.

9.     At all times relevant hereto, COFFEE BEANERY linked to its Website all of its authorized, affiliated, associated, licensed, and/or franchised retail sellers of its food, beverages, and merchandise, including the "Coffee Beanery" store and cafe in Sunrise, Florida owned and operated by DOLPHIN, such that the Website has been and continues to be held out as the official Website for DOLPHIN and its owned store and cafe.  Indeed, the COFFEE BEANERY Website is specifically linked, through a "store locator" feature, to each of the "COFFEE BEANERY" physical retail stores and cafes in the U.S., including the store and café owned and operated by DOLPHIN at the Sawgrass Mills Mall in Sunrise, Florida.  The Website has acted, and continues to act, as a point of sale for all of the "Coffee Beanery" physical retail stores and cafes, including the store and café owned and operated by DOLPHIN in Sunrise, Florida.

10.     Plaintiff's visual disability limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids and services for effective communication, including communication in connection with his use of a computer.

11.     Plaintiff frequently accesses the internet.  Because he is blind, to effectively communicate and comprehend information available on the internet and thereby access and

comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

12.     At all times material hereto, upon information and belief, COFFEE BEANERY was and still is an organization that, through various contracts, franchise, licensing, and/or authorized agreements, exercises specific control over, and thereby "operates", a chain of U.S.-based retail stores and cafes selling food, beverages, and other merchandise, including the store and cafe owned and operated by DOLPHIN in Sunrise, Florida, for purposes of the ADA.  Through the exercise of control over and effective operation of its authorized and licensed retail stores and cafes, including those located in the U.S. and the State of Florida, COFFEE BEANERY sells its food, beverage, and merchandise to the public under the brand name "Coffee Beanery". Each physical Coffee Beanery store and cafe, including that owned and operated by DOLPHIN, is open to the public.  Thus, as the entities exercising control over, maintaining, and/or operating Coffee Beanery physical stores and cafes, Defendants are defined as places of "public accommodation" within meaning of the ADA because they are private entities that own, control, and/or operate "a bakery, grocery dealer, clothing dealer, hardware dealer, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).  In addition, Defendants are defined as places of "public accommodation" within meaning of the ADA because they are private entities that own, control, and/or operate "a restaurant, bar, or other establishment serving food and drink," per 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104(2).

13.     Because Defendants are a store and café open to the public, each of Defendant's physical stores and cafes is a place of public accommodation subject to the requirements of the ADA and its implementing regulations, 42 U.S.C. §12182, §12181(7)(B), §12181(7)(E), and 28 C.F.R. Part 36.

14.     Defendant COFFEE BEANERY owns, controls, maintains, and operates the Website and its various functions and operations.  One of the functions of the Website is to provide the public information on the various locations of COFFEE BEANERY's authorized, licensed, franchised, and branded stores and cafes, including DOLPHIN's Sunrise store and cafe, that sell COFFEE BEANERY's manufactured and "Coffee Beanery" branded food, beverages, and merchandise, and offer various related services such as in-store pickups of food and beverages, to the public.  COFFEE BEANERY also sells to the public its food, beverages, and merchandise through the Website and through its associated network of authorized physical stores and cafes, including the DOLPHIN Sunrise boutique.  Moreover, upon information and belief, DOLPHIN, through its contracts and agreements with COFFEE BEANERY, is directly linked to, and relies on, the Website as its exclusive online presence for the sale of COFFEE BEANERY's branded food, beverages, and merchandise, and for the online arrangement of in-store pickups of food, beverages, and merchandise that have been purchased online.  The Website also provides the public information on the various locations of Defendants' physical stores and cafes that sell their merchandise throughout the United States and within the State of Florida, including the Sawgrass Mills Mall location owned and operated by Dolphin.  Defendants also sell to the public their good and merchandise through the Website.

15.     The Website also services Defendants' physical stores and cafes by providing information on store locations, available merchandise, tips and advice, editorials, sales campaigns, events, and other information that Defendants are interested in communicating to their customers.

16.     Because the Website allows the public the ability to secure information about the locations of Defendants' physical stores and cafes, purchase food, beverages, and merchandise that are also available for purchase in and from the physical stores and cafes, purchase gift cards

for use online and in the physical stores and cafes, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical stores and cafes, the Website is an extension of, and gateway to, the goods, services, privileges, and advantages of Defendants' physical stores and cafes. As a service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Website is an extension of the goods, services, privileges, and advantages made available to the general public by Defendants at and through their brick-and-mortar locations and businesses. Furthermore, the Website is a necessary service and privilege of Defendants' physical stores and cafes in that, as a point of sale for Defendants' stores and cafes, it enables users of the Website to make online purchases of Defendants' food, beverages, and merchandise that is available in and from its physical stores and cafes.

17.     Because the public can view and purchase Defendants' food, beverages, and merchandise that are also offered for sale in and from Defendants' physical stores and cafes, thus acting as a point of sale for Defendants' food, beverages, and merchandise sold in the physical stores and cafes, purchase gift cards for use online and the physical stores and cafes, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical stores and cafes, the Website is a necessary extension of, gateway to, and service, privilege, and advantage of the physical stores and cafes, which are places of public accommodation under the ADA, 42 U.S.C. §§12181(7)(B) and (E). As such, the Website is a necessary service, privilege, and advantage of Defendants' brick-and-mortar stores and cafes that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and

enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical stores and cafes.

18.     At all times material hereto, Defendants were and still are organizations owning, operating, controlling, linking to, and/or offering services through the Website.  Since the Website is open to the public through the internet and is connected to Defendants' physical stores and cafes as a point of sale for the purchase of food, beverages, and merchandise and gift cards from Defendants and their physical stores and cafes, the Website is a necessary service, privilege, and advantage of Defendants' brick-and-mortar stores and cafes that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical stores and cafes.  As such, Defendants have subjected themselves and the Website to the requirements of the ADA.

19.     Plaintiff is and has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied, Defendant's physical stores and cafes (including the store located at the Sawgrass Mills Mall, 12801 W. Sunrise Boulevard, Sunrise, Florida), and to check store hours and food, beverage, and merchandise pricing, purchase food, beverages and merchandise, purchase gift cards, and sign up for an emailer to receive exclusive offers, benefits, invitations, and discounts for use at the Website or in Defendants' physical stores and cafes.  In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been updated to interact properly with screen reader software.

20.     The opportunity to shop and pre-shop Defendants' food, beverages, and merchandise offered for sale in the physical stores and cafes and sign up for an emailer to receive exclusive offers, benefits, exclusive invitations, and discounts for use online and in the physical stores and cafes from his home are important accommodations for Plaintiff because traveling outside of his home as a physically and visually disabled individual is often a difficult, hazardous, frightening, frustrating and confusing experience.  Defendants have not provided their business information in any alternative digital format that is accessible for use by blind and visually disabled individuals using screen reader software while using the internet.

21.     Like many consumers, Plaintiff accesses numerous websites at a time to compare merchandise, prices, services, sales, discounts, and promotions. Plaintiff may look at several dozens of sites to compare features, discounts, promotions, and prices.

22.     Beginning in July 2022, Plaintiff attempted on a number of occasions to utilize the Website to browse through the food, beverage, merchandise, and online offers to educate himself as to the food, beverages, merchandise, sales, discounts, and promotions being offered, and with the intent to make a purchase through the Website or at one of the Defendants' stores and cafes. Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

23.     Plaintiff utilizes screen reader software that allows individuals who are blind and visually disabled to communicate with websites.  However, Defendants' Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

a.  The home page button/company logo is mislabeled;

b.  Once a Specialty Coffee Gift Basket is selected, the item's name, SKU, price, Add a Gift Message, price, and description are not labeled to integrate with the screen reader;

c.  Once a Coffee of the Month Club Subscription is selected, the Size, Regular or Decaf options beyond the first choice are inaccessible when navigating with a keyboard;

d.  The text information for Shop Pay is not labeled to integrate with the screen reader; and

e.  The notification that an item has been added or removed from the shopping cart is not labeled to integrate with the screen reader.

24.    Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties communicating with, the Website. Although the Website appeared to have an "accessibility" widget and plugin displayed, that "accessibility" widget and plugin, when tested, still could not be effectively accessed by, and continued to be a barrier to, blind and visually disabled persons, including Plaintiff.  Plaintiff, thus, was unable to receive any meaningful or prompt assistance through the "accessibility" statement to enable him to quickly, fully, and effectively navigate the Website.

25.    The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, as he is unable to participate in the same online and in-store shopping experience, with the same access to the merchandise, sales, discounts, and promotions, as provided at the Website and in the physical stores and cafes as the non-visually disabled public.

26.    Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendants' physical stores and cafes and to use the Website as an extension, service, privilege, and advantage of the physical stores and cafes, but he is

presently unable to fully do so, as he is unable to effectively communicate with Defendants' physical stores and cafes due to his blindness and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendants through the Website due to his blindness and the Website's access barriers. Thus, Plaintiff, and others who are blind and visually disabled, will suffer continuous and ongoing harm from Defendants' intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

27.     Because the Website clearly provides support for and is connected to Defendants' retail stores and cafes for its goods, services, operation, and use, and is a necessary service, privilege, advantage, and accommodation of Defendants' brick-and-mortar stores for the purchase of Defendant's food, beverages, and merchandise, the Website must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical stores and cafes, which are places of public accommodation subject to the requirements of the ADA.

28.     On information and belief, Defendants have not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

29.     On information and belief, Defendants have not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

30.     On information and belief, Defendants have not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

31. On information and belief, Defendants have not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

32. On information and belief, Defendants have not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

33. On information and belief, Defendants have not instituted a Bug Fix Priority Policy.

34. On information and belief, Defendants have not instituted an Automated Web Accessibility Testing program.

35. Defendants have not created and instituted an effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the blind and visually disabled.

36. Defendants have not created and instituted on the Website a useable page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendants will have the Website, applications, and digital assets accessible to the visually disabled and blind communities.

37. The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

38. Defendants have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendants' food, beverages, and merchandise offered on the Website and in the physical stores and cafes from their homes.

39.     Defendants have not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, accommodations, programs and activities provided by and through the Website and the physical stores and cafes in contravention of the ADA.

40.     Further, public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

41.     The broad mandate of the ADA is to provide equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life.  That mandate extends to internet shopping websites such as the Website.

42.     Defendants are, and at all relevant times have been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

43.     Defendants are, and at all relevant times have been, aware of the need to provide full access to all visitors to the Website.

44.      The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities such as Plaintiff.

45.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendants' unlawful and discriminatory practices in connection with the Website's access and operation.

46.     Notice to Defendants is not required because of Defendants' failure to cure the violations.

13

47.     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

48.     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

### COUNT I – VIOLATION OF THE ADA

49.     Plaintiff re-alleges paragraphs 1 through 48 as if set forth fully herein.

50.     Pursuant to 42 U.S.C. §§12181(7)(B) and (E), Defendant is a public accommodation under the ADA and thus is covered by the ADA.

51.     Pursuant to 42 U.S.C. §§12181(7)(B) and (E), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendants' physical stores and cafes, acts as a point of sale for Defendants' physical stores and cafes by allowing users to purchase food, beverages, and other merchandise that is also available for purchase in and from the physical stores and cafes, allows users to purchase gift cards to make purchases of Defendants' merchandise both online and in the physical stores and cafes, and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts for use both online and in the physical stores and cafes.  The Website thus is an extension of, gateway to, and necessary service, privilege, and advantage of Defendants' physical stores and cafes.  Further, the Website also serves to augment Defendants' physical stores and cafes by providing the public information about  locations of the stores and by educating the public as to Defendants' available products sold through the Website and in the physical stores and cafes.  The Website thus is necessary for Plaintiff to fully enjoy and have access to all of the goods, services, privileges, and advantages being offered by Defendants both online and in their physical stores and cafes.

52.     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

53.     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

54.     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

55.     Defendants' Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

56.     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendants have made available to the public on the Website and in the physical stores and cafes in violation of 42 U.S.C. §12101, *et seq.*, and as prohibited by 42 U.S.C. §12182, *et seq.*

57.     The Website was subsequently visited by Plaintiff's expert in July 2022, and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed.  Defendants thus have made insufficient material changes or improvements to the Website to enable its full use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff.  Also, when the Website was visited by the expert, although the Website appeared to have added an "accessibility" widget and plugin, that "accessibility" widget and plugin, when tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons such as Plaintiff. Defendants thus have failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302. The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Robert D. Moody, attached hereto as Composite Exhibit "A" and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

58.     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

59.     There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible

would neither fundamentally alter the nature of Defendants' business nor would it result in an undue burden to Defendants.

60.    Defendants have violated the ADA – and continue to violate the ADA – by denying access to the Website, and hence its connected physical stores and cafes, by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites.  These violations within the Website are ongoing.

61.    The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

62.    According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

63.    According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities:  "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

64.    Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

65.    As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

66.    As a direct and proximate result of Defendants' failure to provide an ADA compliant Website that is an extension, service, privilege, and advantage of, and point of sale for, Defendants' brick-and-mortar stores and cafes, Plaintiff has suffered an injury in fact by being denied full access to and enjoyment of Defendants' physical stores and cafes.

67.    Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

68.    Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief; including an order to:

a)    Require Defendants to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendants' policy to ensure persons with visual disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered in Defendants' physical stores and cafes and through the Website.

b)    Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website's being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendants to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendants' physical stores and caffes and becoming informed of and purchasing Defendants' food, beverages, and merchandise online, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores and cafes.

69.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A. A declaration that the Website is in violation of the ADA;

B. An Order requiring Defendants, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C.  An Order requiring Defendants, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D.  An Order requiring Defendants, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

E.  An Order directing Defendants, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Website;

F.  An Order directing Defendants, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

G.  An Order requiring, by a date certain, that any third-party vendors who participate on the Website to be fully accessible to the visually disabled;

H.  An Order directing Defendants, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform

---

[1]  or similar.

all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.   An Order directing Defendants, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendants to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J.   An Order directing Defendants, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendants' Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.   An award to Plaintiff of his reasonable attorney's fees, costs, and expenses; and

L.   Such other and further relief as the Court deems just and equitable.


DATED: August 15, 2022


**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
4800 N. Hiatus Rd
Sunrise, FL, 33351
T. 954/362-3800
954/362-3779 (Facsimile)
Email:  rhannah@rhannahlaw.com


By____*s/ Roderick V. Hannah*____
        RODERICK V. HANNAH
        Fla. Bar No. 435384

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: duranandassociates@gmail.com


By ___*s/ Pelayo M. Duran*_____
        PELAYO M. DURAN
        Fla. Bar No. 0146595