UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-61516-CIV-DIMITROULEAS

VICTOR ARIZA,

      Plaintiff,

vs.

THE COFFEE BEANERY, LTD.
a Foreign for-profit corporation, and
DOLPHIN DE AUBERET, INC.,
d/b/a COFFEE BEANERY, a
Florida for-profit corporation,

      Defendants.

_____/

## <u>ORDER DENYING MOTIONS TO DISMISS</u>

**THIS CAUSE** is before the Court on Defendant The Coffee Beanery, Ltd. ("Coffee Beanery")'s Motion to Dismiss the Complaint, and Defendant Dolphin De Auberet, Inc. ("Dolphin")'s document entitled "Motion to Dismiss," which purports to adopt and incorporate by reference Coffee Beanery's Motion to Dismiss the Complaint. *See* [DE's 19, 20].[1]  The Court has carefully reviewed the Motions [DE's 19, 20], Plaintiff Victor Ariza ("Plaintiff" or "Ariza")'s response, notes that no reply was filed, and is otherwise fully advised in the premises.

## I.    <u>BACKGROUND</u>

Plaintiff Victor Ariza ("Plaintiff" or "Ariza") brings this action against Defendants Coffee Beanery and Dolphin under Title III of the American with Disabilities Act, 42 U.S.C. §§ 12181–12189 ("ADA"). *See* [DE 1].  According to Plaintiff's allegations, Plaintiff is a blind and

---

[1] To the extent Dolphin's one-page filing attempts to set forth additional argument beyond those raised in Coffee Beanery's Motion to Dismiss the Complaint, Dolphin fails to incorporate a memorandum of law citing supporting authorities. *See* S.D. Fla. L.R. 7.1(a)(1).  Thus, the Court will consider Dolphin's Motion as a joinder in Coffee Beanery's Motion.

visually disabled person who relies on the assistance of appropriate screen reader software and other assistive technologies for effective communication, including communication in connection with the use of his computer. [DE 1], ¶¶ 5–6, 10-11.

Defendant Dolphin is a Florida for-profit corporation authorized to do business and doing business in the State of Florida, including Broward County, Florida. *Id.* at ¶ 7.  Defendant Coffee Beanery is a foreign for-profit corporation that has at all relevant times been doing business in the State and in Broward County, Florida through its associated website, https://www.coffeebeanery.com (the "Website"), and its affiliated, authorized, associated, licensed, and/or franchised companies operating physical "Coffee Beanery" retail stores and cafes, including Dolphin. ¶7.  Coffee Beanery, through its contracts, licensing, and/or franchise agreements with its authorized retail sellers, operates, conducts, and/or controls sales of its merchandise through, and derives substantial revenues from, its authorized chain of U.S.-based physical stores and cafes which are open to the public, including the Broward County, Florida "Coffee Beanery" authorized store owned and operated by Dolphin at the Sawgrass Mills Mall, Sunrise, Florida, which Plaintiff intended to patronize in the near future. ¶¶8, 12, 13.

Coffee Beanery owns, controls, maintains, and operates the Website and its various functions and operations. ¶14.  Coffee Beanery, through the Website and its affiliated, authorized, associated, licensed, and/or franchised retail stores and cafes, including the retail store and cafe owned and operated by Dolphin, advertises and sells its merchandise and food and beverage products to, and receives payment and revenues from, customers in the State of Florida, including Plaintiff. ¶7.  Coffee Beanery purposefully targets and solicits business from Florida residents through the operation of the Website and its affiliated, associated, licensed, and/or franchised Florida store owned and operated by Dolphin, derives substantial revenues from

repeat business transactions from residents in Florida, and has more than a slight effect on the commerce of Florida as a result. ¶7.

Coffee Beanery linked to its Website all of its authorized, affiliated, associated, licensed, and/or franchised retail sellers of its food, beverages, and merchandise, including the "Coffee Beanery" store and cafe in Sunrise, Florida owned and operated by Dolphin, such that the Website has been and continues to be held out as the official Website for Dolphin and its owned store and cafe. ¶9.  The Coffee Beanery Website is specifically linked, through a "store locator" feature, to each of the "Coffee Beanery" physical retail stores and cafes in the U.S., including the store and café owned and operated by Dolphin at the Sawgrass Mills Mall in Sunrise, Florida. ¶9.  The Website has acted, and continues to act, as a point of sale for all the "Coffee Beanery" physical retail stores and cafes, including the store and café owned and operated by Dolphin in Sunrise, Florida.  ¶9.

One of the functions of the Website is to provide the public information on the various locations of Coffee Beanery's authorized, licensed, franchised, and branded stores and cafes, including Dolphin's Sunrise store and cafe, that sell Coffee Beanery's manufactured and "Coffee Beanery" branded food, beverages, and merchandise, and offer various related services such as in-store pickups of food and beverages, to the public. ¶14.  Coffee Beanery also sells to the public its food, beverages, and merchandise through the Website and through its associated network of authorized physical stores and cafes, including the Dolphin Sunrise boutique. ¶14. Dolphin, through its contracts and agreements with Coffee Beanery, is directly linked to, and relies on, the Website as its exclusive online presence for the sale of Coffee Beanery's branded food, beverages, and merchandise, and for the online arrangement of in-store pickups of food, beverages, and merchandise that have been purchased online. ¶14.  The Website also provides

the public information on the various locations of Defendants' physical stores and cafes that sell

their merchandise throughout the United States and within the State of Florida, including the

Sawgrass Mills Mall location owned and operated by Dolphin. ¶14.  Defendants also sell to the

public their good and merchandise through the Website. ¶14.  The Website also services

Defendants' physical stores and cafes by providing information on store locations, available

merchandise, tips and advice, editorials, sales campaigns, events, and other information that

Defendants are interested in communicating to their customers. ¶15.  Because the Website

allows the public the ability to secure information about the locations of Defendants' physical

stores and cafes, purchase food, beverages, and merchandise that are also available for purchase

in and from the physical stores and cafes, purchase gift cards for use online and in the physical

stores and cafes, and sign up for an emailer to receive exclusive online offers, benefits,

invitations, and discounts for use online and in the physical stores and cafes, the Website is an

extension of, and gateway to, the goods, services, privileges, and advantages of Defendants'

physical stores and cafes. ¶16.   Because the public can view and purchase Defendants' food,

beverages, and merchandise that are also offered for sale in and from Defendants' physical stores

and cafes, thus acting as a point of sale for Defendants' food, beverages, and merchandise sold in

the physical stores and cafes, purchase gift cards for use online and the physical stores and cafes,

and sign up for an emailer to receive exclusive online offers, benefits, invitations, and discounts

for use online and in the physical stores and cafes, the Website is a necessary extension of,

gateway to, and service, privilege, and advantage of the physical stores and cafes. ¶17.

Plaintiff is and has been a customer who is interested in patronizing, and intends to

patronize in the near future once the Website's access barriers are removed or remedied,

Defendant's physical stores and cafes (including the store located at the Sawgrass Mills Mall,

12801 W. Sunrise Boulevard, Sunrise, Florida), and to check store hours and food, beverage, and merchandise pricing, purchase food, beverages and merchandise, purchase gift cards, and sign up for an emailer to receive exclusive offers, benefits, invitations, and discounts for use at the Website or in Defendants' physical stores and cafes. ¶19.  In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been updated to interact properly with screen reader software. ¶19.

Plaintiff claims the Website is not compatible with his screen-reading software and keyboard. *Id.* at ¶¶ 20–22. The main deficits identified by Plaintiff are that: the home page button/company logo is mislabeled; once a Specialty Coffee Gift Basket is selected, the item's name, SKU, price, Add a Gift Message, price, and description are not labeled to integrate with the screen reader; once a Coffee of the Month Club Subscription is selected, the Size, Regular or Decaf options beyond the first choice are inaccessible when navigating with a keyboard; the text information for Shop Pay is not labeled to integrate with the screen reader; and the notification that an item has been added or removed from the shopping cart is not labeled to integrate with the screen reader. ¶ 23. As such, Plaintiff seeks declaratory and injunctive relief against Defendants, alleging that the Website violates Title III of the ADA. *See* [DE 1]. Defendant Coffee Beanery has filed a Motion to Dismiss the Complaint, which Defendant Dolphin has joined. *See* [DE's 19, 20].

## II.     <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A pleading that asserts mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  And "on the assumption that all the allegations are true (even if doubtful in fact)," the factual allegations pleaded "must be enough to raise a right to relief above the speculative level."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* (brackets in original) (quoting Fed. R. Civ. P. 8(a)(2)).  "The Supreme Court has employed a 'two-pronged approach' in applying the foregoing principles: first, a reviewing court should eliminate any allegations in the complaint that are merely legal conclusions; and second, where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  *Boyd v. Warden, Holman Correctional Facility*, 856 F.3d 853, 864 (11th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 679).

## III.  <u>DISCUSSION</u>

Defendants seek dismissal of Plaintiff's claims on grounds that the Website is not a "place of public accommodation;" that Plaintiff does not allege that Defendant Coffee Beanery

owns, leases (or leases to), or operates a "place of public accommodation; and that Plaintiff has failed to adequately allege facts to show that the Website is an intangible barrier to any goods and services offered at the physical Sunrise Store. As explained below, the Court disagrees.

First, Defendants seek dismissal of Plaintiff's claims on grounds that the Website is not in and of itself a "place of public accommodation" under Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"). As the Court explained recently in *Ariza v. Broward Design Ctr., Inc.,* the law in the Eleventh Circuit is that websites are not in and of themselves places of public accommodation under the ADA:

> Defendant's primary argument for dismissal relies on the Eleventh Circuit's recently vacated decision in *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266 (11th Cir.), *opinion vacated on reh'g*, 21 F.4th 775 (11th Cir. 2021). As both parties correctly point out, the Court can still consider the vacated opinion in *Gil* if it finds it persuasive. *See, e.g., Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009) ("We are free to give statements in a vacated opinion persuasive value if we think they deserve it."). But even applying *Gil*'s reasoning to Plaintiff's allegations here, the Court does not find dismissal appropriate.

> In *Gil*, the Eleventh Circuit held that "websites are not a place of public accommodation under Title III of the ADA." *Gil*, 993 F.3d at 1277. The Eleventh Circuit also recognized that Title III's protection "covers both tangible . . . and *intangible barriers*, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges" of a place of public accommodation. *Id.* at 1278 (quoting *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1283 (11th Cir. 2002)) (emphasis in original). Put another away, if a website operates as an intangible barrier to a physical place of public accommodation, a plaintiff can state a claim under Title III of the ADA. In finding that defendant's website did not operate as an intangible barrier to defendant's physical stores in *Gil*, the Eleventh Circuit relied heavily on the fact that defendant's website was "not a point of sale" as all goods had to be purchased at the physical stores. *Id.* at 1279, 1283; *see also Fernandez v. Mattress Xperts Broward, Inc.*, No. 21-80573-CIV, 2021 WL 3931243, at *2 (S.D. Fla. Sept. 2, 2021) (noting the same).

*Ariza v. Broward Design Ctr., Inc.*, No. 22-61475-CIV, 2022 WL 10262037, at *2 (S.D. Fla. Oct. 18, 2022). In this case, Defendants' argument that the Website is not in and of itself a

"place of public accommodation" is a red herring, as the Complaint does not claim that the Website is in and of itself a place of public accommodation under the ADA. *See* [DE 1].  Rather, Plaintiff alleges that the Website, which has a nexus to and acts as a point of sale for the brick-and-mortar stores owned, operated, and/or controlled by Defendants, contains access barriers to the blind and visually disabled in violation of ADA. *See id.*

Second, Defendants argue in support of dismissal that Plaintiff does not allege that Defendant Coffee Beanery exercises the necessary control over a "place of public accommodation," i.e., the physical Sunrise Store, because the Complaint does not plausibly allege that Defendant Coffee Beanery owns, leases (or leases to), or operates the physical coffee shop operated by Defendant Daulphin that Plaintiff allegedly intended to patronize.  The Court rejects this argument.  Coffee Beanery may be correct that a franchisor is not liable under Title III of the ADA over alleged structural barriers at a physical franchise store, where the franchisor does not have the ability to control the structural modification of the physical location to improve its accessibility to the disabled to bring it into compliance with the ADA. *See, e.g., Neff v. American Dairy Queen Corp.,* 58 F.3d 1063 (5th Cir. 1995).  However, where, as here, the discrimination is being caused by an allegedly inaccessible Website that is alleged to create an intangible barrier that excludes Plaintiff from accessing the goods, services, privileges, or advantages of the physical store, the franchisor can be liable as the owner and operator of the website. *See, e.g., Robles v. Domino's Pizza LLC*, No. CV 16-6599 JGB, 2021 WL 2945562, *7-8 (C.D. Cal. June 23, 2021) (rejecting franchisor's argument that the ADA did not cover its website because it did not own or operate the physical store connected to the website).

Third, Defendants argue that the Complaint should be dismissed because Plaintiff has failed to adequately allege facts to show that the Website is an intangible barrier to any goods

and services offered at the physical Sunrise Store.  In *Haynes v. Dunkin' Donuts LLC*, 741 F. App'x 752, 753 (11th Cir. 2018), the Eleventh Circuit reversed this Court for dismissing a website inaccessibility complaint for failing to plausibly allege facts demonstrating that his inability to utilize defendant's website was an impediment to plaintiff's ability to access defendants' physical stores and enjoy the goods and services offered there. The Court reasoned that "a website is a service that facilitates the use of [defendant's] shops, which are places of public accommodation" and "the ADA is clear that whatever goods and services [defendant] offers as a part of its place of public accommodation, it cannot discriminate against people on the basis of a disability, even if those goods and services are intangible." *Id.* at 754 (citing 42 U.S.C. § 12182(a); *Rendon*, 294 F.3d at 1283). The Court ultimately found "the alleged inaccessibility of [defendant's] website denies [plaintiff] access to the services of the shops available on [defendant's] website, which includes the information about store locations and the ability to buy gift cards online." *Id.*  Here, based upon a careful review of the allegations, many of which are set forth *supra,* the Court finds that the Complaint sufficiently alleges facts showing that the Website creates an intangible barrier that excludes Plaintiff from accessing the goods, services, privileges, or advantages of the physical store. *See* [DE 1] at ¶¶ 14-18, 20, 22-27, 51, 56, 60, 66. *See also Ariza v. Broward Design Ctr., Inc.*, No. 22-61475-CIV, 2022 WL 10262037, at *3 (S.D. Fla. Oct. 18, 2022) (denying motion to dismiss based on similar allegations); *see also Ariza v. S. Moon Sales, Inc.*, No. 1:21-CV-23604, 2022 WL 4345136, at *3 (S.D. Fla. Sept. 7, 2022), *report and recommendation adopted*, No. 21-23604-CIV, 2022 WL 4310972 (S.D. Fla. Sept. 19, 2022) (finding nearly identical allegations sufficient to enter a final default judgment against a defendant on an ADA website inaccessibility claim).

Accordingly, the Defendants' Motions are due to be denied.

9

IV.     **CONCLUSION**

For the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1.      Defendants' Motions to Dismiss the Complaint [DE's 19, 20] are **DENIED**; and

2.      Defendants shall file their answer(s) to the Complaint [DE 1] on or before

**December 13, 2022**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida,

this 29th day of November, 2022.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of Record

10